No. 38,644

W. R. KENOYER (Revived in the name of ROBERTA KENOYER, Executrix of the Estate of W. R. Kenoyer, Deceased), *Appellant*, v. MAGNOLIA PETROLEUM COMPANY, a Corporation, *Appellee*.

(245 P. 2d 176)

Opinion filed June 7, 1952.

*Charles Vance*, of Liberal, argued the cause, and *J. S. Brollier*, of Hugoton, and *H. Hobble, Jr.*, and *Chester A. Nordling*, both of Liberal, were with him on the briefs for the appellant.

George C. Spradling, of Wichita, argued the cause, and W. F. Lilleston, Henry V. Gott and George Stallwitz, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action by a landowner for an accounting of his royalty from a gas well drilled by defendant company. Plaintiff claims his royalty to be ⅛ and defendant contends it is 1/32. From a judgment in favor of defendant the plaintiff has appealed.

The facts, which are not in dispute, are:

On December 9, 1940, the Federal Farm Mortgage Corporation was the owner in fee simple of two quarter sections of land in Stevens county, hereinafter referred to as the southwest quarter of section 7, and the southeast quarter of section 12. On that date it executed an oil and gas lease covering both tracts to the United Producing Company, Inc. This lease was for a term of ten years and as long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them, is produced, and provided for payment to lessor of the usual ⅛ royalty. It further provided:

"9. As to the gas leasehold estate hereby granted (excluding casinghead gas produced from oil wells), lessee is expressly granted the right and privilege to consolidate said gas leasehold with any other adjacent or contiguous gas leasehold estates to form a consolidated gas leasehold estate which shall not exceed a total area of 640 acres; and in the event lessee exercises the right and privilege of consolidation, as herein granted, the consolidated gas leasehold estate shall be deemed, treated and operated in the same manner as though the entire consolidated leasehold estate were originally covered by and included in this lease, and all royalties which shall accrue on gas (excluding casinghead gas produced from oil wells), produced and marketed from the consolidated estate, including all royalties payable hereunder, shall be prorated and paid to the lessors of the various tracts included in the consolidated estate in the same proportion that the acreage of each said lessor bears to the total acreage of the consolidated estate, and a producing gas well on any portion of the consolidated estate shall operate to continue the oil and gas leasehold estate hereby granted so long as gas is produced therefrom.

"10. . . . It is hereby agreed that, in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the holder or owner of any such part or parts shall fail or make default in the payment of the proportionate part of the rent due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lessee or any assignee hereof shall make due payment of said rentals. If at any time there be as many as four parties entitled to rentals or royalties, lessee may withhold payments, thereof unless and until all parties designate, in writing, in a recordable instrument to be filed with the lessee, a common agent to receive all payments due hereunder,

and to execute division and transfer orders on behalf of said parties, and their respective successors in title."

In April, 1941, plaintiff purchased both tracts, subject to the oil and gas lease.

· That portion of the lease covering the southwest quarter of section 7 was assigned to defendant in July, 1945. Defendant also owned leases covering the remainder of section 7, and in July, 1946, plaintiff and defendant, together with the owners of the remainder of section 7, entered into a written Gas Unitization Agreement by the terms of which the southwest quarter of section 7 was unitized with the remainder of such section for the purpose of producing gas.

This agreement described the various leases covering the entire section and recited that the oil and gas leasehold estates on all of section 7 were combined, pooled and unitized for the production of gas, and that gas royalty from such unit was to be treated as an entirety and be divided among and paid to the owners thereof in proportion to the acreage of each royalty owner in the unit to the total acreage thereof. It was silent concerning the fact the lease on the southwest quarter of section 7 also covered the southeast quarter of section 12. The lessors ratified and confirmed the leases on their respective lands in the unit "subject to and in accordance with the terms and conditions of said leases and the terms of this agreement."

In passing, it may be said in a general way that under a unitization agreement covering a unit of 640 acres a single gas well on such unit is, under proration orders, permitted to produce as much gas as would be permitted of four wells if the unit were divided into 160 acre units and a well drilled on each of such quarter sections.

Subsequently, defendant acquired an assignment of the lease insofar as it covered the southeast quarter of section 12. It also owned leases covering the remainder of section 12 and desired to unitize that section as it had previously done with section 7. Plaintiff refused to enter into a unitization agreement with defendant and the owners of the remainder of section 12.

In August, 1947, defendant entered into a gas unitization agreement with the owners of the remainder of section 12, whereby all of that section was unitized as a 640 acre tract. This agreement was not signed by plaintiff. Defendant drilled a gas well on this unit, it being located on the southeast quarter of such section,

owned by plaintiff, and subsequently obtained an order of the State Corporation Commission granting an allowable to the well on the basis of a producing unit of 640 acres. The well produced the full allowable and plaintiff was tendered the royalty attributable to his portion of the unitized tract—that is, a fourth of the ⅛ called for in the lease. He refused the tender on the ground the southeast quarter of section 12, owned by him and on which the well was drilled, was not properly unitized wih the remainder of section 12 and that he was entitled to a full ⅛ royalty of the gas produced rather than a 1/32.

We thus have this situation: Plaintiff owned the southwest quarter of section 7 and the southeast quarter of section 12, subject to the lease in question. Defendant owned the lease as to all of section 7. Plaintiff and the owners of the remainder of section 7 entered into the unitization agreement with defendant by the terms of which all of section 7 was created into a unit of 640 acres for the purpose of a gas allowable. We are not concerned with royalties from that section. Defendant later acquired ownership of the lease as to the southeast quarter of section 12, and, as it also owned leases on the remainder of section 12, sought to pool all of the section into one unit. Plaintiff refused to enter into such an agreement. Defendant then went ahead and unitized all of section 12, drilled a producing well on the quarter section owned by plaintiff, obtained an allowable on the basis of a producing unit of 640 acres, and tendered plaintiff a 1/32 royalty, which tender was refused.

Plaintiff first argues that the unitization clause contained in paragraph 9 of the lease, *supra*, is invalid in that it creates a "power," that the time within which such "power" may be exercised is unlimited and indefinite, and therefore violates the rule against perpetuities.

He further argues that if the provision in question is valid then it is indivisible and both tracts must be included within the same unit rather than placing them in separate units of 640 acres each, as was done.

With respect to plaintiff's first contention we fail to see how the provision in question violates the rule against perpetuities. The lease does not create any future estates. The rights of the parties thereunder are definitely fixed, and all estates and rights created by it vested immediately upon its execution and delivery. It granted to lessee the right to operate the lands covered by it separately or

as a part of a consolidated unit. The royalty provisions fit either operation and provide a formula by which the amount of royalties payable to the lessor is capable of accurate and definite ascertainment. These rights were vested. The rule is well-stated in 41 Am. Jur., Perpetuities and Restraints on Alienation:

"The rule against perpetuities is concerned only with the remoteness of vesting of contingent future interests, and not with their duration or termination. If a future estate or interest vests within the time prescribed in the rule against perpetuities, it may continue beyond such period without violating the rule. . . ." (§ 22, p. 66.)

"The rule against perpetuities is concerned only with the time within which the title vests, and not with the postponement of the enjoyment of the estate. Since a vested interest does not necessarily include a right to the possession, an interest which is vested is not affected by the rule, however remote may be the time when it may come into possession or enjoyment. . . ." (§ 23, p. 67.)

In our opinion the rule against perpetuities simply has no application to the provision of the lease under consideration.

With reference to plaintiff's other contention, it is difficult, if not impossible, to read the unitization clause of the lease as requiring that both tracts in question be included in one unit of 640 acres. In the first place, the lease itself was assignable in whole or in part. Secondly, suppose a lease such as this covered tracts which were several miles apart. Under such circumstances it is obvious that they could not be pooled in the same unit because they would not be "adjacent or contiguous gas leasehold estates," as provided by the lease itself.

However, assuming for the sake of argument that the lease contemplated inclusion of the two tracts into one unit only, we are of the opinion that when plaintiff entered into the unitization agreement whereby the southwest quarter of section 7 was pooled with the remainder of that section he waived any right he may have had to compel the inclusion of both tracts in one unit. In other words, the effect of that agreement was to remove the southwest quarter of section 7 from the unitization clause in the lease. Even though the two tracts were contiguous (and we are told that they were) it would have been impossible thereafter for defendant to unitize both tracts into one unit for the reason that both plaintiff and defendant had agreed that for gas purposes plaintiff's tract in section 7 was to be included in the unit constituting all of that section.

And, finally, it is argued the unitization of section 12 is not binding upon plaintiff because he did not sign the agreement for the same. One answer to that contention is that nowhere in the lease is it required that the lessee obtain the written consent of the lessor in order to effect such unitization. By the provision of paragraph 9 of the lease, *supra,* the lessee "is expressly granted the right and privilege to consolidate said gas leasehold with any other adjacent or contiguous gas leasehold estates to form a consolidated gas leasehold estate which shall not exceed a total area of 640 acres; . . ."

From the record before us it is clear that the trial court was correct in concluding that with respect to the gas produced from the well drilled on section 12 the plaintiff was entitled to a royalty of 1/32 rather than ⅛.

The judgment is therefore affirmed.