No. 56,223

LEONARD DRACH, *Plaintiff-Appellee,* v. LAVERN ELY, EUGENE ELY, ORVILLE STROBEL, MARILYN STROBEL, SHIRLEY BURROWS, HOMER BURROWS, WILMA TINDEMAN, *Defendants,* and ALICE HARTNETT, GERALD HARTNETT, and NADINE BERUBE, *Defendants-Appellants.*

(703 P.2d 746)

Opinion filed July 26, 1985.

*Robert Anderson,* of Turner and Boisseau, Chartered, of Great Bend, argued the cause, and *Casey R. Law,* of the same firm, was with him on the brief for appellants.

*Timothy R. Keenan,* of Keenan, Mauch & Keenan, P.A., of Great Bend, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This case is before the court for review of the decision of the Court of Appeals in *Drach v. Ely,* 10 Kan. App.2d 149, 694 P.2d 1310 (1985). Leonard Drach filed this action in Stafford District Court to quiet his title to a quarter-section of land in Stafford County. Plaintiff prevailed and three of the defendants appealed. The Court of Appeals in a split decision affirmed the district court and we granted defendants' petition for review. We reverse the decisions of the Court of Appeals and the district court.

The facts are set out at length in the Court of Appeals opinion and will not be repeated in detail here. Suffice it to say the issue before the court is the construction of the will of Fritz Mettscher and whether certain interests in real property left to his children

are mineral interests or royalty interests. The district court and the Court of Appeals found they were royalty interests which violated the rule against perpetuities and were therefore void. Mettscher had six children and six quarter-sections of land. His will provided in paragraph 2:

"I give, devise and bequeath the oil, gas and other minerals *in and under and that may be produced from* the hereinafter described farm lands which I now own, to my six children, in the proportions as hereinafter set forth, to-wit:
To my son, F. H. Mettscher, a one-sixth interest;
To my daughter, Marie Strobel, a one-sixth interest;
To my son, Henry Mettscher, a one-sixth interest;
To my daughter, Wilhelmina Kues, a one-sixth interest;
To my daughter, Martha Siefkes, a one-sixth interest;
To my daughter, Ida Cadman, a one-sixth interest;

"*It is my will and intention that the mineral rights herein devised shall be and include only the oil, gas and other minerals which may be produced from said premises, and shall not, in any manner, be interpreted or construed as including any of the oil, gas or mineral lease rentals, delay rentals or bonuses which may be payable under any leases upon said real estate;* it being my will and desire that all of the rentals, delay rentals and bonuses payable under any leases upon said real estate shall be payable to the person to whom the specific real estate upon which such rentals are paid is hereinafter given and devised." (Emphasis added.)

Paragraph 3 of the will states in pertinent part:

"I give, devise and bequeath, *subject to the reservation made in paragraph two* of this my Last Will and Testament, my farm lands to my children, as here immediately set forth, to-wit:" (Emphasis added.)

The will then gives each named child a specifically described quarter-section. The appellants are successors in interest to Ida Cadman and Marie Strobel, two of the children of Mettscher. Martha Siefkes, another of Mettscher's children, conveyed her quarter-section to appellee subject "to the terms of the Last Will and Testament of Fritz Mettscher, deceased." The district court granted summary judgment to plaintiff finding that the conveyances under paragraph 2 of the will were perpetual royalty interests and void because of the rule against perpetuities.

The trial court made, *inter alia,* the following findings:

"A. That the testator's use of the language 'in and under' in conjunction with 'that may be produced' is inconsistent, and creates an ambiguity in the will in that 'in and under' is indicative of a mineral interest devise, while 'that may be produced from' is an indication that a royalty bequest was intended.

. . . . . .

"C. That the terms of the bequest in favor of Marie Strobel and Ida Cadman,

defendants predecessors in title, indicate that the testator intended to bequeath to them a royalty interest and not a mineral interest, as indicated by the absence of a grant of ingress and egress, right to bonuses, rents and delay rentals payable in relation to a lease, and the authority or power to execute valid oil and gas leases. The absence of such rights or privileges are indicative of the fact that a bare royalty interest was intended to be conveyed."

While the Court of Appeals majority opinion makes no reference to the will being ambiguous it does make an exhaustive analysis of paragraph 2 of the will in reaching its ultimate conclusion that the interests described were royalty rather than mineral interests. While we have no quarrel with most of the legal propositions stated in the three Court of Appeals opinions, we do not agree they support the results reached in this case.

At the outset there are certain basic principles which must be kept in mind. In *Russell v. Estate of Russell*, 216 Kan. 730, 534 P.2d 261 (1975), the court summarized the rules to be applied in construing a will:

"In construing a will courts must (*a*) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (*b*) uphold it if possible, (*c*) avoid any interpretation resulting in intestacy [or invalidity] when possible, (*d*) give supreme importance to the intention of the testator, and (*e*) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms. (Following *In re Estate of Porter*, 164 Kan. 92, 187 P.2d 520.)" Syl. ¶ 1.

In addition to the foregoing general principles pertaining to construction of a will we have also recognized certain rules specifically relating to the application of the rule against perpetuities. Where one of two permissible constructions of an instrument renders it violative of the rule against perpetuities, and the other does not, the latter will be adopted. *Singer Company v. Makad, Inc.*, 213 Kan. 725, Syl. ¶ 6, 518 P.2d 493 (1974); *Klingman v. Gilbert*, 90 Kan. 545, 549, 135 Pac. 682 (1913); 61 Am. Jur. 2d, Perpetuities § 8. The modern tendency is to temper the rule where its rigid application would do violence to an intended scheme for the the disposition of property. *Singer Company*, 213 Kan. at 729. A provision of a will which is invalid as a violation of the rule may be stricken out by the court to allow the testamentary plan to be given effect. *In re Estate of Freeman*, 195 Kan.

190, 404 P.2d 222 (1965). Thus, it is clear that the rule against perpetuities is not a favorite of the courts.

We repeat, the cardinal rule in the construction of a will is that the intention of the testator must be ascertained, and the will so construed to carry out that intention. *In re Estate of Berryman,* 226 Kan. 116, 595 P.2d 1120 (1979); *In re Estate of Wernet,* 226 Kan. 97, 596 P.2d 137 (1979); *Giese v. Smith,* 195 Kan. 607, 408 P.2d 687 (1965); *In re Estate of Weidman,* 181 Kan. 718, 314 P.2d 327 (1957); *In re Estate of Dees,* 180 Kan. 772, 308 P.2d 90 (1957). Is the testator's intention clear in this instance? We think it is. Judge Brookens, in his concurring opinion in the Court of Appeals stated:

> "A careful study of the subject will, it seems to me, compels the conclusion the testator intended to give each of his six children a specific quarter-section of land, together with the sole right to lease that specific quarter-section of land for oil and gas, receive bonus payments, receive lease rentals, receive delay rentals, control access to the specific land, and control the right to drill on the specific land. But, if oil or gas were produced, brought to the surface and severed from the land, then all of the six children would share equally in that windfall." 10 Kan. App. 2d at 155-56.

It appears clear that the testator in this case wanted his children to share equally in his estate. Not only did he leave each child one quarter-section of land and an equal share in the minerals in all six quarters, but he further provided the residue of his estate would be divided equally among the six children. Despite the Court of Appeals assertion that "any other interpretation defies reason" we think it is clear that the testator intended to, and did *"devise"* an undivided one-sixth mineral interest in all six quarters to each of his six children. Does the language seized upon by the district court and the Court of Appeals require otherwise? The answer clearly is "No."

The district court found that the use of the words "in and under and that may be produced from" created an ambiguity subject to construction. Those words alone do not create any ambiguity and, in fact, are widely used in conveyances of mineral interests. In 1 Williams and Myers, Oil and Gas Law § 304.5 (1984), the author states:

> "Perhaps the most common method of creating a mineral interest is by a grant or reservation of 'oil, gas and other minerals *in and under and that may be produced from'* the land. It is clear that *this phrase, standing alone, will create a mineral interest.* . . .
> "It is odd that the phrase 'that may be produced from' should be so often added

to the words 'in and under' in conveying mineral interests. The latter phrase is sufficient to create a mineral interest, and the case for such is not strengthened by adding 'and that may be produced,' which standing alone looks like and has been held to create a royalty interest."

As stated by Judge Rees in his dissenting opinion in the Court of Appeals:

"Oil, gas and other minerals 'in and under,' standing alone, creates a mineral interest. 1 Williams and Meyers, Oil and Gas Law § 304.4, p. 473 (1983); *Rutland Savings Bank v. Steele*, 155 Kan. 667, 670, 671, 672, 127 P.2d 471 (1942). *Cf. Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 132, 368 P.2d 19 (1962). The will language says that.

"Oil, gas and other minerals *'in and under and that may be produced from,'* standing alone, creates a mineral interest. 1 Williams and Meyers, Oil and Gas Law § 304.5, p. 477 (1983); *Serena v. Rubin*, 146 Kan. 603, 606, 608, 72 P.2d 995 (1937); *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 91-92, 69 P.2d 4 (1937). The will language says that.

"Oil, gas and other minerals *'that may be produced,'* standing alone, creates a mineral interest under our law. 1 Williams and Meyers, Oil and Gas Law § 304.6, p. 481 (1983); *Brooks v. Mull*, 147 Kan. 740, 741, 78 P.2d 879 (1938); *Palmer v. Brandenburg*, 8 Kan. App. 2d at 159-61. The will language says that." 10 Kan. App. 2d at 159.

We conclude the phrase "in and under and that may be produced from" refers to a mineral interest rather than a royalty interest and standing alone does not create any ambiguity.

The "ambiguity," if any, in the Mettscher will is between the testator's initial conveyance of a mineral interest to his six children and his subsequent grant of lease rentals, delay rentals and bonuses to the devisee of the specific real estate upon which such monies are paid. No one would dispute that the right to receive rentals and bonuses is included within "the indicia of mineral interests." Also included as a part of the ownership of a mineral interest are the right of ingress and egress, the right to sell or otherwise convey all or part of the mineral estate, the right to explore for and develop the minerals under the subject land and the executive or leasing right. 1 Williams and Meyers, Oil and Gas Law § 301 (1984). None of these rights accrue to the owner of a pure royalty interest. A royalty owner is entitled to nothing other than a share of production if, as and when there is production. If the testator had intended to convey only a royalty interest to his children, there would have been no reason to specify that each surface owner would receive the rentals and bonus paid on his or her property. The other five children would

have no claim to such payments and they would inure to the benefit of the surface owner without any such provision In 1 Kuntz, Law of Oil & Gas § 16.2 (1962), it is stated:

"If the granting clause or reservation uses language which normally creates a mineral interest [as opposed to a royalty interest], . . . the rights to receive bonuses and rentals are included as normal incidents of ownership. If additional language specifically describes the right of the owner of such an interest to receive bonuses and rentals, it is surplusage. If the additional language serves to exclude the right to receive bonuses and rentals, the instrument may reasonably be construed to create a mineral interest with the specified incidents removed." p. 377.

Thus it appears clear to us that the testator intended each child to receive a one-sixth interest in the minerals in all the property but the interest of each would be nonparticipating as to rentals and bonuses paid on property other than his or her own. To say that the grant of the rentals and bonuses to each surface owner shows a clear intent to grant a royalty interest has the tail wagging the dog.

We concur in much of what is said by Judge Rees in his analysis of this case in his dissent. It would serve no useful purpose to extend this opinion further. Applying the general principles and rules hereinbefore set forth we hold that under the specific facts of this case the will of Fritz Mettscher devised interests in the oil, gas and other minerals in place (mineral interests), nonparticipating as to rentals or bonuses, and not royalty interests. Being mineral interests, they vested upon the death of the testator and are not void as violating the rule against perpetuities.

The judgment of the Court of Appeals and the judgment of the District Court are reversed.