(753 P.2d 310)

No. 60,442

HARLIN H. POWELL, Executor of the Estate of Ansel W. Wright, Deceased, *et al.*, *Appellants*, v. JOSEPH EDWARD PROSSER, SR., *Appellee*.

Opinion filed April 14, 1988.

*Jeff Kennedy*, of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, and *Charles E. Cotton*, of Wichita, for the appellee.

Before ELLIOTT, P.J., DAVIS and LARSON, JJ.

LARSON, J.: In this quiet title action, Harlin H. Powell, executor of the estate of Ansel W. Wright, and heirs of the estate appeal from the entry of summary judgment in favor of Joseph Edward Prosser, Sr., on the grounds two instruments are not ambiguous and convey mineral interests.

On June 9, 1942, Ansel W. and Elma E. Wright executed in favor of Adrian ₽. Wright two instruments titled "Oil and Gas Royalty Conveyance." Powell and the heirs are the successors in interests of the grantors and Prosser is the successor in interest of the grantee.

After Adrian P. Wright's death (and the discovery of oil production), grantors' successors filed a quiet title action against the grantee's successor contending the conveyances were ambiguous and conveyed royalty interests which violate the rule against perpetuities and are therefore void.

The trial court, ruling on cross-motions for summary judgment, found the instruments unambiguous and conveying valid mineral interests.

The two conveyances are substantially identical except one alludes to an oil and gas lease in place at the time of its execution and the other does not.

Because the central issue requires an examination of the entire instrument to determine whether a mineral interest or royalty interest has been granted, the instrument subject to an existing oil and gas lease is set forth in full:

"ANSEL W. WRIGHT ET UX )
 TO )
 ADRIAN P. WRIGHT ) OIL AND GAS ROYALTY
 ) CONVEYANCE

"KNOW ALL MEN BY THESE PRESENTS, That Ansel W. Wright and Elma E. Wright, his wife, of Sedgwick County, Kansas, grantors herein, for and in consideration of the sum of One Dollar and other valuable consideration paid by Adrian P. Wright, grantee herein, the receipt of which is hereby acknowledged, have granted, sold, conveyed and assigned and by these presents do grant, sell, convey and assign unto the said grantee an undivided one sixteenth (1/16) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land situated in the County of Sedgwick and State of Kansas, to wit:

The Southwest Quarter (SW ¼) of Section Twelve (12), Township Twenty six (26), Range One (1) West of the Sixth P.M., containing one hundred sixty (160) acres more or less,
to have and to hold to him, his heirs and assigns forever excepting, however, from this conveyance and this instrument is made subject to the rights, reservations and privileges hereinafter set forth.

"It is understood that there is now an oil and gas lease covering the above described premises, dated August 4, 1941, between the grantors herein and the Prunty Production Company as lessee recorded in Miscellaneous Book 153 Page 405 records of the Register of Deeds office of Sedgwick County, Kansas, and this conveyance is made subject to the said oil and gas lease and covers and includes one half (½) of the oil royalty and gas rental or royalty that may become due and be paid or delivered under the terms of said lease.

"It is agreed and this conveyance is made subject to the provision that should said oil and gas lease be terminated for any reason, that the grantor, Ansel W. Wright, his heirs, devisees or assigns may at any time lease the above described premises for oil and gas and other mineral privileges without the permission or consent of the said grantee, his heirs, devisees, representatives and assigns and without the necessity of the said grantee, his heirs, devisees, representatives or assigns signing such lease or joining in the execution thereof or executing any written consent thereto; provided, however, that such lease shall provide that the said grantee, his heirs, devisees or assigns shall receive a one sixteenth (1/16) of the oil and gas that may be produced under such lease, delivered and paid as by the terms of such lease shall be provided.

"It is further agreed and this conveyance is made subject to the provision that the grantee, his heirs, representatives and assigns shall be entitled to one half (½) of all bonus or consideration paid for any oil and gas lease that may be made covering said premises and one half (½) of all rentals that may be paid thereunder to extend the time within which a well may be drilled for oil and gas; it being understood and agreed however that the right to such portion of such bonus and rentals does not make it necessary for the grantee, his heirs, devisees, representatives or assigns to consent to such lease but the grantor, Ansel W. Wright, his heirs, devisees, representatives or assigns shall have the full power to determine the bonus or consideration to be received for any such oil and gas or other mineral lease and the rentals to be paid thereunder without the consent, permission or approval of the grantee, his heirs, devisees, representatives or assigns.

"IN WITNESS WHEREOF, the said grantors have hereunto subscribed their names as of this _____ day of June, 1942,

/s/ Ansel W. Wright
/s/ Elma E. Wright"

Both documents were properly acknowledged and recorded.

The grantors' successors ask us to find the documents to be ambiguous and to consider extrinsic evidence consisting of a letter dated June 5, 1943, of B.F. Alfred, an attorney who pre-

pared the documents, and copies of the inventories in the estates of Adrian and Jane Wright where the interests were not listed.

The record reflects, and appellants admit, that neither party at the trial level, upon moving for summary judgment, contended the documents were ambiguous.

Although we do not believe the documents are ambiguous so as to allow consideration of extrinsic evidence, and we would not, even if properly raised, consider the old attorney's letter and the failure of a fiduciary to list an interest in an estate's inventory, the issue is also subject to our court's long stated rule that "[a] point not raised before or presented to the trial court cannot be raised for the first time on appeal." *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987) (citing *Lostutter v. Estate of Larkin*, 235 Kan. 154, Syl. ¶ 6, 679 P.2d 181 [1984]).

The most comprehensive and recent summary of our numerous Kansas cases determining whether a mineral or a royalty interest has been granted is found in 1 Pierce, Kansas Oil and Gas Handbook §§ 6.14 to 6.29 (1986) where the following construction rules are summarized at § 6.15:

"Before considering the construction process used by Kansas courts, judicial rules commonly employed to interpret mineral and royalty conveyances should be noted. 'The cardinal principle or test to be applied in the interpretation of such instruments . . . is the intention of the parties.' *Lathrop v. Eyestone*, 170 Kan. at 424, 227 P.2d at 141. This goal of ascertaining the parties' intention is guided, initially, by the following interpretive rules:

"1. All language used anywhere in the instrument will be considered. Examine the entire instrument, within its 'four corners,' to ascertain the intent and purpose of the parties. *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 129, 368 P.2d 19, 23 (1962).

"2. The title given an instrument is not determinative. However, the contents of the instrument must make it clear it is something other than what its title indicates. *Magnusson v. Colorado Oil & Gas Corp.*, 183 Kan. 568, 573, 331 P.2d 577, 582 (1958). See also *Richards v. Shearer*, 145 Kan. 88, 64 P.2d 56 (1937) (instrument titled 'Sale of Oil and Gas Royalty' held to convey a mineral interest).

"3. Although all parts of the instrument will be considered, the terms of the granting clause carry particular weight in ascertaining the interest conveyed. *Lathrop*, 170 Kan. at 424, 227 P.2d at 141."

The specific wording of the granting clause of the Wright conveyances reads as follows:

"[D]o grant, sell, convey and assign unto the said grantee and undivided one

sixteenth (1/16) interest in and to all of the oil, gas and other minerals *in and under and that may be produced from* the following described land." (Emphasis added.)

If only the wording "in and under" is utilized, a mineral interest is intended. *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.* 189 Kan. 125, 132, 368 P.2d 19 (1962). The grant of an interest in "production" is a major factor in holding the instrument to be a royalty conveyance. *Lathrop v. Eyestone,* 170 Kan. 419, 426, 227 P.2d 136 (1951).

Where both phrases are utilized, the issue is determining which phrase should prevail.

This problem is now well settled under the specific ruling of our Kansas Supreme Court in *Drach v. Ely,* 237 Kan. 654, 703 P.2d 746 (1985), where the court held:

"We conclude the phrase 'in and under and that may be produced from' refers to a mineral interest rather than a royalty interest and standing alone does not create any ambiguity." 237 Kan. at 658.

The Supreme Court reversed the judgment of the Court of Appeals in *Drach v. Ely,* 10 Kan. App. 2d 149, 694 P.2d 1310 (1985), and quoted with approval the statement by Judge Rees in his dissenting opinion in that case:

" 'Oil, gas and other minerals "in and under," standing alone, creates a mineral interest. 1 Williams and Meyers, Oil and Gas Law § 304.4, p. 473 (1983); *Rutland Savings Bank v. Steele,* 155 Kan. 667, 670, 671, 672, 127 P.2d 471 (1942). *Cf. Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 132, 368 P.2d 19 (1962). The will language says that.

" 'Oil, gas and other minerals *"in and under and that may be produced from,"* standing alone, creates a mineral interest. 1 Williams and Meyers, Oil and Gas Law § 304.5, p. 477 (1983); *Serena v. Rubin,* 146 Kan. 603, 606, 608, 72 P.2d 995 (1937); *Shaffer v. Kansas Farmers Union Royalty Co.,* 146 Kan. 84, 91-92, 69 P.2d 4 (1937). The language says that.

" 'Oil, gas and other minerals *"that may be produced,"* standing alone, creates a mineral interest under our law. 1 Williams and Meyers, Oil and Gas Law § 304.6, p. 481 (1983); *Brooks v. Mull,* 147 Kan. 740, 741, 78 P.2d 879 (1938); *Palmer v. Brandenburg,* 8 Kan. App. 2d at 159-61. The will language says that.' 10 Kan. App. 2d at 159." 237 Kan. at 658.

An additional factor used by the Kansas Supreme Court to determine whether a mineral or royalty interest is established is the right to grant oil and gas leases and to receive bonuses and delay rentals under a lease.

"It is well settled that the owner of minerals in place has an equal right to

lease the property for the exploration of oil and gas and their development as does the owner of the surface who is also the owner of minerals in place, and to share proportionately in bonuses and delayed rentals which may be provided for in the lease. [Citations omitted.] The converse is true of the owner of a royalty interest. Such an interest does not carry the right to lease the property for oil and gas development or to join in the execution of such leases [citation omitted], or to participate in bonuses or delayed rentals." 189 Kan. at 133.

The wording of the conveyances involved herein specifically provides:

"[G]rantor, Ansel W. Wright, his heirs, devisees, or assigns may at any time lease the above described premises for oil and gas and other mineral privileges without the permission or consent of the said grantee, his heirs, devisees, representatives and assigns and without the necessity of the said grantee, his heirs, devisees, representatives or assigns signing such lease or joining in the execution thereof or executing any written consent thereto."

The above wording, taken by itself, would be indicative of the granting of a royalty interest. However, the conveyance further explains and justifies the court's conclusions that a mineral interest is intended by including the following provision conveying to the grantee a share of the bonus and delay rentals:

"[T]he grantee, . . . shall be entitled to one half (½) of all bonus or consideration paid for any oil and gas lease that may be made covering said premises and one half of all rentals that may be paid thereunder."

The provision for giving the grantee one-half of the bonus and delay rentals without the right to lease is totally consistent with the intention of granting a present interest in the minerals while leaving with the grantor the sole discretion as to the time and conditions under which a lease might be granted.

The Supreme Court in *Drach v. Ely* quotes with approval from 1 Kuntz, Law of Oil and Gas § 16.2, p. 377 (1962):

" 'If the granting clause or reservation uses language which normally creates a mineral interest [as opposed to a royalty interest], . . . the rights to receive bonuses and rentals are included as normal incidents of ownership. If additional language specifically describes the right of the owner of such an interest to receive bonuses and rentals, it is surplusage. If the additional language serves to exclude the right to receive bonuses and rentals, the instrument may reasonably be construed to create a mineral interest with the specific incidents removed.' " 237 Kan. at 659.

Ansel W. Wright reserved control of the executive or leasing rights, but the granting of one-half of the bonuses and rentals shows the conveyance was of a mineral interest.

A further factor to be considered is the term of the conveyance. A grant for a term of years and as long as oil and gas are being produced is a provision more consonant with a royalty interest, while one "forever," as was provided in the Wright conveyance, is more in keeping with an intention of the grantor to convey a mineral interest in perpetuity. See *Heyen v. Hartnett*, 235 Kan. 117, 124, 679 P.2d 1152 (1984).

It is true there is no mention in the conveyance of the rights of "ingress and egress" which nevertheless is implied as a necessary incident of mineral ownership. See 1 Williams & Meyers, Oil and Gas Law § 301 (1986).

Neither should we be unduly concerned by the title placed on the conveyance by the scrivener. In *Serena v. Rubin*, 146 Kan. 603, 608, 72 P.2d 995 (1937), the instruments at issue were titled "Sale of Oil and Gas Royalty" but contained granting clauses identical to those within and were held to be mineral deeds. See also *Froelich v. United Royalty Co.*, 178 Kan. 503, 506, 290 P.2d 93 (1955), in which the title of the instrument was "Royalty Conveyance" but the court stated it was not governed by the name or title affixed to a document.

Concluding as we do that the conveyances covered a one-half mineral interest, it is finally necessary to recognize and approve the trial court's construction of the conveyances consistent with the previous holdings of *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125; *Heyen v. Hartnett*, 235 Kan. 117; and others.

This difficulty is occasioned where it is not understood that owners of mineral interests still own all of the minerals even if they are subject to a lease reserving to the mineral interest owners one-eighth or some other fractional royalty. As a consequence, the conveyancer wishing to convey a one-half mineral interest expresses it by conveying one-sixteenth of the minerals, erroneously believing, since the land is under lease, one-half of his interest is one-half of the one-eighth royalty or one-sixteenth. Such appears clearly to be the case here.

A recent example of this problem is shown in *Heyen v. Hartnett*, where the court construed the following conveyance:

" '[Masters] grant[s unto Hartnett and Evans] . . . an undivided 1/16 interest in

and to all of the oil, gas and minerals whatsoever in and under . . . the lands. . . .
"If such land is covered by valid oil and gas or other mineral lease . . . [Hartnett and Evans] shall have an undivided ½ interest in the Royalties, Rentals, and Proceeds therefrom.' " 235 Kan. at 118.

In holding the instrument conveyed a one-half mineral interest, the court was influenced by the "widespread confusion" associated with expressing conveyance of fractional mineral interests and referred to *Shepard*, 189 Kan. at 134-45, for an excellent discussion of this early-day misconception and misuse of the fraction "1/16" when "½" was really intended. 235 Kan. at 124.

The trial court properly ordered that the 1/16 interest granted in the conveyances should be changed and deemed to be a ½ mineral interest.

The findings of fact and conclusions of law of the trial court are approved and its judgment is affirmed.