(235 P.3d 566)
No. 101,766

DONALD R. RUCKER and BARBARA L. RUCKER, *Appellees*, v. EARL R. DELAY and LEAH GRIFFITH DELAY, HENRY CHOQUETTE and RUTH MARY CHOQUETTE, LEIGH G. DELAY, EDITH L. DELAY, JOHN E. DELAY, ELIZABETH BENNETT, HARRIET DELAY, MARIAN ALLENDER, ELOISE HAYES, and WENDY ANDERSON, *Appellants*.

Opinion filed July 23, 2010.

*Richard N. Raleigh*, of Medicine Lodge, for appellants.

*Alan C. Goering*, of Goering and Slinkard, of Medicine Lodge, for appellees.

Before RULON, C.J., GREENE, J., and LARSON, S.J.

LARSON, J.: In this quiet title action, Earl R. DeLay and other heirs of Earl R. DeLay and Leah Griffith DeLay, his wife, appeal from the trial court's entry of judgment after a trial on stipulated facts in favor of Donald R. Rucker and Barbara L. Rucker that a reservation in a 1924 deed was of a royalty interest which violated the rule against perpetuities.

The record and stipulation reflect that on May 17, 1924, in consideration of $1,200, Earl R. DeLay and Leah Griffith DeLay, his wife, executed a general warranty deed in favor of Lurena Keener covering the NW/SW/4 of Section 4 and the NE/4SE/4 of Section 5, all in Township 32, Range 10, West of the 6th P.M. in Barber County, Kansas, which contained the following reservation: "The grantor herein reserves 60% of the land owner's one-eighth interest to the oil, gas or other minerals that may hereafter be developed under any oil and gas lease made by the grantee or by his subsequent grantees."

The DeLays are the successors in interest of the grantors in the above-described deed, and the Ruckers are the present owners of the described real property and, thus, the successors in interest of the grantee of the above-described deed.

In 2008, the Ruckers filed a quiet title action against the DeLays in which the Ruckers contended the reservation violated the rule against perpetuities in that it was an attempt to retain a royalty interest in the grantor in production, and not a mineral interest in place. Since it is violative of the rule against perpetuities, the purported reservation was alleged to be null and void.

The DeLays answered, contending they owned 60% interest in the minerals under the described land, arguing the reservation did not violate the rule against perpetuities and that it was a mineral interest under Kansas decisions, and requesting the court quiet their title in and to such interest.

The parties entered into stipulations of fact which included the description of the property, the wording of the reservation in the

1924 deed, that the deed was not filed until August 29, 1925, that there has never been oil and/or gas produced on the property, and that in 1946 and 1966 ratifications of oil and gas leases were executed by the DeLays but since 1966 no DeLay successor has executed an oil or gas lease or satisfied one. It was also stipulated the Barber County Clerk's Severed Mineral Book lists the DeLays' interest as six mineral acres (60% x ⅛ x 80), the mineral rights were not exhibited to the county clerk prior to August 29, 1925, and all taxes against the severed mineral interests assessed by Barber County have been paid by the DeLays.

The issues were well briefed and argued by counsel for the parties. The trial court in its memorandum decision noted that *Drach v. Ely*, 237 Kan. 654, 703 P.2d 746 (1985), stated that applying the rule against perpetuities is not favored, but *Drach* involved interpretation of the language of a will where unique rules of construction favor protecting the intent of the testator that do not apply here. The court concluded that "developed" has a similar meaning to "produced and marketed." The memorandum decision stated:

"A different construction is possible almost everywhere but Kansas which treats oil or natural gas in place as realty but produced oil or natural gas as personalty. [Citations omitted.]

"Kansas has consistently held the rule against perpetuities will be applied (even with the harsh result of forfeiture of an intended property right) if the interest in question was a nonparticipating [no interest in the leasing aspects of ownership] royalty interest. *Miller v. Sooy*, 120 Kan. 81 (1926) and many following decisions.

"The question in this case is what was created by the language of the deed in question. The Court concludes it is a perpetual nonparticipating royalty interest subject to termination by the Kansas authorities cited above.

. . . .

"The language here attempts to create an interest which has no leasing rights (nonparticipating) with no reservation of a right to enter and produce. The one-eighth is a traditional leasehold royalty a portion of which is attempted to be reserved forever but which may not ever come to fruition (if land is never leased or developed)."

The trial court stated that its ruling for the Ruckers was not what was intended by the parties to the transaction in 1924 but that the court was not permitted to ignore settled Kansas precedent. Be-

cause the court's ruling on this issue was dispositive, it declined to rule on the delay in the recording of the deed issue.

From this decision, the DeLays have appealed. With the district court's decision being based on the language of the deed and the stipulations of the parties, "the standard of appellate review is de novo for cases decided by the district court based on documents and stipulated facts." *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

We are called upon in this appeal to construe a reservation in a deed executed in 1924 which requires us to consider the direction of K.S.A. 58-2202 which provides in part: "[E]very conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

In *Corbin v. Moser*, 195 Kan. 252, 258, 403 P.2d 800 (1965), a case with facts similar to ours, we find the following direction relative to the constructions of deeds.

"[W]here an ambiguity exists so that a deed is capable of two possible constructions the one most favorable to the grantee will be selected. We find the rule stated in 16 Am. Jur., Deeds, § 165, p. 530, as follows:

" 'The general rule is well settled that if there is any ambiguity in a deed so that it is capable of two possible constructions, one of which will be more favorable to the grantee, the other of which will be more favorable to the grantor, that method of construction which will be more favorable to the grantee will be selected and the deed will be construed against the grantor. All doubts, therefore, are to be resolved against the grantor. This rule is statutory in some jurisdictions. The rule is predicated upon the reasoning that since a grant is expressed in words of the grantor's own selection, it is, prima facie, an expression of his intention, and he is therefore chargeable with the language used. If, therefore, the deed can inure in different ways, the grantee, it is said, may take it in such way as will be most to his advantage.' "

The contentions of the parties on appeal are predictable and consistent with those made in the trial court.

The DeLays argue the district court erred in determining that the interest reserved in the deed was a royalty interest. They contend the language in the reservation is similar to language in cases they cite, which the appellate court of Kansas have determined were reservations of mineral interests.

The Ruckers assert the district court was correct in its ruling that the reservation in the deed was of a royalty interest. They assert there is no reserved right to lease or receive bonus or delay rentals, the reservation is of a share of production being the landowner's one-eighth interest under an oil and gas lease executed by grantees or subsequent grantees.

The difference between whether an interest is one of royalty or a mineral interest is important because in Kansas, a mineral interest is deemed to vest immediately upon the creation of the interest, *Lathrop v. Eyestone*, 170 Kan. 419, 423-24, 227 P.2d 136 (1951), while a royalty interest is an interest in personal property and not immediately vested.

When we are called upon to interpret whether a conveyance or a reservation is a royalty or mineral interest, we look to the summary set forth in 1 Pierce, Kansas Oil and Gas Handbook §§ 6.14 to 6.18 (1991), hereafter Pierce, where the following construction rules are set forth at § 6.14:

" 'The cardinal principle or test to be applied in the interpretation of such instruments . . . is the intention of the parties.' *Lathrop*, 170 Kan. at 424, 227 P.2d at 141. This goal of ascertaining the parties' intention is guided, initially, by the following interpretive rules:
1.  All language used anywhere in the instrument will be considered. Examine the entire instrument, within its 'four corners,' to ascertain the intent and purpose of the parties. *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 129, 368 P.2d 19, 23 (1962).
2.  The title given an instrument is not determinative. However, the contents of the instrument must make it clear it is something other than what its title indicates. *Magnusson v. Colorado Oil & Gas Corp.*, 183 Kan. 568, 573, 331 P.2d 577, 582 (1958). See also *Richards v. Shearer*, 145 Kan. 88, 64 P.2d 56 (1937) (instrument titled 'Sale of Oil and Gas Royalty' held to convey a mineral interest).
3.  Although all parts of the instrument will be considered, the terms of the granting clause carry particular weight in ascertaining the interest conveyed. *Lathrop*, 170 Kan. at 424, 227 P.2d at 141. . . .

"Courts examining language within conveyance instruments have focused on specific factors which tend to represent the elements of either a royalty or mineral interest. Some factors are given more weight than others.

"The major factors noted in the decided cases are whether the instrument conveys:
1.  An ownership interest in oil and gas prior to its actual production.

2. A right to enter the property to conduct development operations.
3. The right to lease the property and receive bonus, delay rental, and royalty."

Commissioner Hatcher, writing for the Supreme Court in *Corbin*, described a court's dilemma in cases such as we now face in this manner:

"We search previous decisions for aid in construction. However, we seldom find the same confusing language twice used and previous cases are of little assistance. This court has on many occasions defined both oil and gas royalties and mineral interests. However, the definitions are of little assistance when the scrivener commingles the words which are used in distinguishing the two interests." 195 Kan. at 255-56.

The difference between a mineral interest and a royalty interest is similarly set forth in our appellate decisions. A mineral interest is an interest in the "[m]inerals, including oil and gas, in place or in and under the land." *Froelich v. United Royalty Co.*, 178 Kan. 503, 507, 290 P.2d 93 (1955), *modified on reh.* 179 Kan. 652, 297 P.2d 1106 (1956). A mineral interest is considered real property. When a mineral interest is transferred, there is a severance of the fee. A royalty interest is merely an interest in the "oil and gas severed and produced from the land under an oil and gas lease." 178 Kan. at 507. A royalty interest is considered personal property, and it does not sever the fee when it is created.

After citing seven cases where "royalty interest" and "mineral interest" had been defined and distinguished by Kansas decisions, *Stratmann v. Stratmann*, 204 Kan. 658, 662, 465 P.2d 938 (1970), stated:

"The term 'royalty interest' generally refers to a right to share in the production of oil and gas at severance. It is personal property and concerns the proceeds from oil and gas leases if and when there is production.

"The term 'mineral interest' as commonly used refers to the oil and gas in place and constitutes a present ownership of an interest in real property. (*Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 368 P.2d 19.) A prime characteristic of a mineral interest is the right to enter the land to produce and carry on production activities. This right may be leased to others."

Professor Pierce in his Kansas Oil and Gas Handbook § 6.14, p. 6-17 states: " 'Royalty' is the right to share in oil and gas when it is produced . . . [u]nlike royalty, a mineral interest includes the

right to oil and gas in place and the right to develop, or authorize development of, the resource."

In discussing the ownership interest prior to production (which is significant in our appeal as it has been stipulated that no production of oil or gas has ever existed on the real property in issue), Professor Pierce states: "The first factor courts look for is whether the instrument conveys a right to oil and gas 'in and under' the land, which tends to indicate a mineral interest or a right to oil and gas 'produced' from the land, which tends to indicate a royalty interest." Pierce § 6.14, p. 6-19.

With the language of the reservation in the 1924 deed in our case being "60% of the landowner's one-eighth interest to the oil, gas or other minerals that may . . . be developed [produced] under any oil and gas lease made by the grantee, or by his subsequent grantees," our Kansas decisions would seem to require that we conclude the reservation is of a royalty interest.

Our Supreme Court in *Lathrop v. Eyestone*, 170 Kan. 419, 227 P.2d 136 (1951), reviewed three separate instruments and found the first to be a grant of a mineral interest where language included the right of "a perpetual and irrevocable right, privilege and license to enter upon said land or any part thereof and prospect for and drill wells for oil and gas therein." 170 Kan. at 421. The other two instruments conveyed " 'an undivided one-fourth (¼) in a certain oil and gas mining lease' " and also " 'one-fourth (¼) of the oil and gas royalties reserved to the lessors . . . which one-fourth of the royalties shall not be less than one-sixteenth (¹⁄₁₆) of the production of the lease.' " 170 Kan. at 422. It was held the grant of an interest in "production" and royalties (an interest in personal property) were major factors in its decision that the two assignments were conveyances of a royalty interest. 170 Kan. at 426-27.

The *Lathrop* opinion then distinguished its facts from *Miller v. Sooy*, 120 Kan. 81, 242 Pac. 140 (1926), where the instrument was binding only with respect to leases executed by the then landowners and not as running with the land, making it not subject to attack on the ground it violated the rule against perpetuities. In *Lathrop*, the royalty interests bind successors or assigns and future fee owners might never execute another lease and the fee title owner would

not be precluded from doing his or her own developing. The opinion then held:

> "It is, therefore, wholly problematical when, if ever, such an interest under future leases would vest. Such a grant violates the rule against too remote vesting. In 41 Am. Jur., Perpetuities and Restraints on Alienation, § 24, it is said:
>
> " '. . . A possibility, or even a probability, that the interest or estate may vest within that time is not enough, for it is said, the question of probabilities does not enter into the equation.' " 170 Kan. at 428.

When courts consider whether the instrument grants or reserves the right to enter the premises to conduct operations for oil and gas, a royalty interest was found to exist in *Corbin* despite wording in the instrument reserving "a one-sixteenth (1/16) royalty interest of all oil, gas, or minerals in place." The court said: "The language creating the reservation makes no reference to the right to operate or develop, or any right of ingress or egress to and from the premises." 195 Kan. at 257. The wording "minerals in place" was not deemed to change the result.

The DeLays' reservation cannot be construed to include the right to enter the premises or to conduct oil and gas operations as the language is specific to rights under leases executed by grantees or successors to grantees which must be construed to reserve only a royalty interest.

In *Cosgrove v. Young*, 230 Kan. 705, 712, 642 P.2d 75 (1982), the Supreme Court was asked to interpret a contract purported to convey a royalty interest. The language in the granting clause was as follows: "[T]he parties of the first part 'sell, assign and agree to deliver . . . one-half (1/2) of the royalty in Oil and Gas produced upon the . . . land.' " In addition, the court pointed out that no right of ingress or egress was granted; there was no reference to the oil, gas, or other minerals in and under the property; and no further reservations were made in the contract relating to transferability, leasing rights, or other factors previously considered significant by the court. See *Froelich*, 178 Kan. 503; *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 368 P.2d 19 (1962). There was nothing in the instrument indicating that more than a bare royalty interest was intended to be conveyed. *Cosgrove*, 230 Kan. at 712-13.

The *Cosgrove* opinion relied on *Lathrop* as to the application of the rule against perpetuities to the royalty interest and reinforced our Kansas rule that production is the vesting event when it said:

"Even if an oil and gas lease were required to be executed within the time prescribed by law, there would still be no vesting of title until royalty becomes due and payable to the grantor or his successor. The execution and delivery of an oil and gas lease does not insure that there will ever be any production attributable to the lease. Additionally, as was the situation in *Lathrop v. Eyestone*, the instrument is not prohibitive of the grantor developing the minerals for himself, without any oil and gas lease being involved. Under such circumstances, there would never be any royalties paid to anyone." 230 Kan. at 715.

*Cosgrove* concluded the trial court correctly held the instrument violated the rule against perpetuities and was therefore null and void. Perhaps in response to Justice Herd's dissent, the opinion further stated: "We are not unmindful that some other jurisdiction might well reach a different result in applying their case law to the issue herein. However, the parties hereto seek no alteration to our existing case law and we see no compelling reason for change." 230 Kan. at 715.

Justice Herd, in his dissent, said he would reverse *Lathrop* and make Kansas law conform to the better rule of an Arkansas case, *Hanson v. Ware*, 224 Ark. 430, 274 S.W.2d 359 (1955). He concluded that the Supreme Court need not go that far to reverse the trial court, stating such could be accomplished by distinguishing *Lathrop* and using *Froelich* as authority. 230 Kan. at 725.

Justice Herd had earlier in his dissent quoted from several treatises, Summers, Kuntz, and Williams & Meyers, which were all critical of our Kansas rule. As to *Lathrop*, he said:

"*Lathrop v. Eyestone* was written to apply narrowly to sales of a future interest dependent upon a condition precedent to vesting. The majority opinion extends the rule against perpetuities to *all* sales of oil and gas royalty in Kansas which extend beyond twenty-one years regardless of the wording of the instrument of conveyance. Until now this court has been unwilling to take such a step; for example, in *Froelich v. United Royalty Co.*, 178 Kan. 503, 290 P.2d 93 (1955), *modified on reh.*, 179 Kan. 652, 297 P.2d 1106 (1956), decided subsequent to *Lathrop*, we held a conveyance comparable to the one we are concerned with to be exempt from the rule against perpetuities because 'the interest vested immediately.' 178 Kan. at 509." 230 Kan. at 722.

The dissent's reasoning, however, did not carry the day in *Cosgrove*, and this precise issue has not been before our Supreme Court in the last 29 years.

The DeLays have asked us to apply the Supreme Court's reasoning in *Drach v. Ely*, 237 Kan. 654, 703 P.2d 746 (1985). But in *Drach*, a will was construed to follow the testator's intent, and a mineral interest rather than a royalty interest was deemed to have been created. There was no mention in Justice, later Chief Justice Holmes' opinion in *Drach* of either *Lathrop* or *Cosgrove*, but the following specific rules relating to the application of the rule against perpetuities were stated:

"Where one of two permissible constructions of an instrument renders it violative of the rule against perpetuities, and the other does not, the latter will be adopted. *Singer Company v. Makad, Inc.*, 213 Kan. 725, Syl. ¶ 6, 518 P.2d 493 (1974); *Klingman v. Gilbert*, 90 Kan. 545, 549, 135 Pac. 682 (1913); 61 Am. Jur. 2d, Perpetuities § 8. The modern tendency is to temper the rule where its rigid application would do violence to an intended scheme for the disposition of property. *Singer Company*, 213 Kan. at 729. A provision of a will which is invalid as a violation of the rule may be stricken out by the court to allow the testamentary plan to be given effect. *In re Estate of Freeman*, 195 Kan. 190, 404 P.2d 222 (1965). Thus, it is clear that the rule against perpetuities is not a favorite of the courts." 237 Kan. at 656-57.

The language in the will subject to construction in *Drach* was as follows:

" 'I give, devise and bequeath the oil, gas and other minerals in and under and that may be produced from the hereinafter described farm lands, which I now own, to my six children . . . .'

" '*It is my will and intention that the mineral rights herein devised shall be and include only the oil, gas and other minerals which may be produced from said premises, and shall not, in any manner, be interpreted or construed as including any of the oil, gas or mineral lease rentals, delay rentals or bonuses which may be payable under any leases upon said real estate*; it being my will and desire that all of the rentals, delay rentals and bonuses payable under any leases upon said real estate shall be payable to the person to whom the specific real estate upon which such rentals are paid is hereinafter given and devised.' " 237 Kan. at 655.

The court determined the phrase "in and under and that may be produced from" refers to a mineral interest and not a royalty interest and standing alone does not create any ambiguity. 237 Kan. at 658. Further, the court pointed out there would have been no

reason to specify that each child would receive the bonuses and delay rentals on his or her property, if the testator had only meant to convey a royalty interest. 237 Kan. at 658. The court held the interests were mineral interests which vested at the death of the testator and were not void as violating the rule against perpetuities. 237 Kan. at 659.

The DeLays attempt to equate the phrase in the 1924 deed "to the oil, gas or other minerals that may . . . be developed under" to the language in *Drach* stated above "in and under and that may be produced from." This argument fails to recognize the entire wording of the DeLays' reservation which reserves "60% of the land owner's one-eighth interest" may not stop at the word "under," but rather the entire phrase "to the oil, gas or other minerals that may hereafter be developed under any oil and gas lease made by the grantee or by his subsequent grantees" must be recognized and this interest is clearly only one of the right to a share of the *royalty* under an oil and gas lease.

Further, the rules of construction in *Drach* are to ascertain the intent of the testator, while in our case, the language of the deed must be construed most favorable to the grantees or their successors (in this case, the Ruckers). See *Corbin*, 195 Kan. at 258.

The language concerning the disfavor of the rule against perpetuities found in *Drach* is favorable to the DeLays, but the language of the interest in the oil, gas, and other minerals is not. When the reservation is read in its entirety, as we are directed to do, it is a reservation of a royalty interest which comes into being based on an oil and gas lease "made by the grantee or by his subsequent grantees."

A third factor earlier stated that is to be considered is the right to lease and receive bonus, delay rental, and royalty which are all rights of a holder of a mineral interest. We are taught by *Shepard,* that a royalty interest does not carry the right to lease the property for oil and gas development, to join in the execution of leases, or to participate in bonuses or delay rentals. 189 Kan. at 133.

Although the DeLays did execute several ratifications of oil and gas leases, the history and record in this case show the reserved interest has never been equated with the right to lease and receive

bonuses, delay rentals, or royalty which is clearly indicative that the reserved interest is that of a royalty interest.

There are, however, other factors which must be considered before we can finally resolve the issue of the validity of the reservation to the DeLays. A critical and possibly determinative fact is that it is a "reservation" and our Supreme Court clearly held in *Nelson v. Kring*, 225 Kan. 499, 502, 592 P.2d 438 (1979), that "[g]enerally speaking, future interests reserved to or remaining in grantor or in the estate of the testator are not subject to the rule against perpetuities." *Nelson* did not involve mineral or royalty interests but was rather an action to construe a charitable trust set up in a will. However, the clear statement above set forth, if applied directly to our situation, would require a ruling that the royalty interest reserved in the 1924 deed is not subject to the rule against perpetuities and, therefore, valid and continuing.

This problem has been recognized by Professor Pierce in the Kansas Oil and Gas Handbook where at § 4.14 dealing with future interests it is stated that in applying the rule against perpetuities the first task is to determine if you have a future interest subject to the rule. If the interest can be classified as the possibility of reverter, right of entry, reversion, and remainder are each deemed "vested" by the law and, therefore, not subject to the rule, relying on *Nelson* and *Commercial National Bank of Kansas City v. Martin*, 185 Kan. 116, 121, 340 P.2d 899 (1959). Pierce, at p. 4-20.

However, the bald statement that the rule against perpetuities does not apply to a reservation by a grantor is not without problems as Professor Pierce goes on to state:

"The rule against perpetuities does not apply to interests which the grantor 'excepts' from a conveyance, even though the conveyed interest may violate the rule. In *Nelson v. King* the court notes: 'Generally speaking, future interests reserved to or remaining in the grantor or in the estate of the testator are not subject to the rule against perpetuities.' *Nelson*, 225 Kan. at 502, 592 P.2d at 42. This is because the interest, prior to and after the partial conveyance, is 'vested' in grantor. Although enjoyment of the future interest excepted from the grant may be delayed, this is no different from the situation where the grantor retains a possibility of reverter, right of entry, reversion, or remainder. However, application of this exception to the Kansas treatment of royalty will be conceptually difficult. Since Kansas treats 'production' as the vesting event, how can a grantor who

excepts a perpetual royalty from his grant, prior to production, be presently vested with anything? It is submitted the conceptual problem is not caused by the exception to the rule, but rather by the use of 'production' as the vesting event." Pierce, at p. 4-20.

Our Kansas decisions have not been consistent as to how the rule against perpetuities has been treated when dealing with interests other than royalties.

In *Howell v. Cooperative Refinery Ass'n*, 176 Kan. 572, 271 P.2d 271 (1954), Howell had put together a block of leases and assigned them to CRA reserving a ⅟₁₆th overriding royalty with the assignment stating it was also applicable to any extensions or renewal thereof. CRA did not drill on the assigned acreage and the initial lease expired. CRA later obtained a lease on the property and contended the second lease was not a renewal or extension of the first leases and the initial assignment violated the rule against perpetuities as to extensions or renewals.

Our Supreme Court did not rely on the apparent agreement between the parties as occurred some 30 years later in *First Nat'l Bank & Trust Co. v. Sidwell Corp.*, 234 Kan. 867, 678 P.2d 118 (1984). Rather, it held the interest, under which no production had been obtained, vested upon the delivery of the first assignment, "and in such case the rule against perpetuities has no application." *Howell*, 176 Kan. at 575.

If the rule of *Lathrop* that a royalty does not vest until production is obtained would have been applied, it would seem that the override in *Howell* might not vest within 21 years because there was no certainty that production would occur. *Lathrop* was not discussed or distinguished in *Howell*.

We have several other cases that seem to limit the application of the *Lathrop* rule.

In *Froelich v. United Royalty Co.*, 178 Kan. 503, 290 P.2d 93 (1955), *modified on reh.* 179 Kan. 652, 297 P.2d 1106 (1956), a conveyance of oil and gas royalty which did not share in bonus, rental, or executive right was designated a "mineral interest" and the perpetuities argument was summarily treated by the opinion, stating: "The rule against perpetuities does not apply in this case because United's grantee interest vested immediately. (*Kenoyer v.*

*Magnolia Petroleum Co.*, 173 Kan. 183, 245 P.2d 176; 70 C.J.S. Perpetuities § 6, p. 580)." 178 Kan. at 509. The fact the interest might vest beyond the perpetuities period was not considered, and *Lathrop* was not cited.

However, the authority of *Lathrop* was not diminished and ultimately was reinforced in 1982 by *Cosgrove*.

We have previously set forth in its entirety the rules regarding the perpetuities problem which were stated in *Drach* as "not a favorite of the courts." 237 Kan. at 657.

Similar statements regarding the rule against perpetuities is found in the *Sidwell Corp.* case which is really an "area of mutual interest" agreement case. The *Sidwell Corp.* opinion recognizes that " '[a] transaction which is exclusively contractual is not subject to the rule against perpetuities'; the rule does not affect merely personal contracts not creating rights of property. [Citations omitted.]" 234 Kan. at 875.

The *Sidwell Corp.* opinion further stated:

"We have previously acknowledged that the recent trend among legal authorities is to relax the harsh and inflexible application of the rule, and instead follow tenable legal theories which will give effect to the intention of the parties. *Singer Company v. Makad, Inc.*, 213 Kan. 725, 729, 518 P.2d 493 (1974). The contract here did not involve the vesting of future interests in real estate and did not constitute a restraint upon the alienation of that property." 234 Kan. at 876.

The *Singer Company v. Makad, Inc.*, 213 Kan. 725, 518 P.2d 493 (1974), decision refused to apply the rule against perpetuities to a shopping center lease, but the 1974 statement referred to above was also mentioned in both the Supreme Court opinion and Judge Rees' Court of Appeals dissent in *Drach v. Ely*, 10 Kan. App. 2d 149, 694 P.2d 1310, *rev'd* 237 Kan. 654 (1985). Judge Rees opined:

"Left for consideration on another day in some similar case is the proposition found in *Singer Company v. Makad, Inc.*, 213 Kan. 725, 729, 518 P.2d 493 (1974), where it is said:

'[T]he recent trend among legal authorities is to relax the harsh and inflexible application of the [rule against perpetuities] and . . . courts are now disposed to follow one of several tenable theories which will avoid remorseless application of the rule and give effect to the intention of the parties. . . .

'[O]ur own cases reflect the modern tendency to temper the rule where its rigid application would do violence to the disposition of property.'
See also *Cosgrove v. Young*, 230 Kan. at 721-725 (dissent)." 10 Kan. App. 2d at 164.

Perhaps Judge Rees was prophetic and our appeal is the case where the application of the rule against perpetuities to oil and gas interests should again be considered by our Supreme Court.

We need not discuss the decisions in this area from other states. It is sufficient to state that Kansas, with the exception of one California case, stands alone in its application of the rule against perpetuities to royalty interests. See 2 Williams and Meyers, Oil & Gas Law § 323, p. 21 (2009), where it is stated:

"It is submitted that the result and reasoning in *Hanson v. Ware* is sound, as applied to both royalty and to nonexecutive mineral interests, and upon analytical and policy grounds. It should be accepted in all states, and *Lathrop v. Eyestone* and *Dallopi v. Campbell* should be repudiated at home and rejected elsewhere."

It also appears that a change in our Kansas law would not have any serious economic effect on our oil and gas industry. As Professor Pierce states:

"The rule, as applied to the royalty interest, does not attempt to remedy any of the evils for which the rule was created. In *First National Bank & Trust Co. v. Sidwell Corp.*, the court notes the goal of the rule against perpetuities is to keep property freely alienable so as not to exclude it from commerce and development for long periods of time. Perpetual royalty interests, like overriding royalty interests, working interests, and mineral interests are freely alienable and or frequently marketed in all producing states which uphold their validity. The existence of a perpetual royalty interest merely affects the value to be paid for the mineral interest; it in no way restricts or inhibits the ability to sell, develop, or otherwise engage in commerce with, the mineral interest subject to a perpetual royalty interest." Pierce, pp. 4-23 to 4-24.

Were we to write on a clean slate, our reasoning and result would be different. However, our obligations as members of the Kansas Court of Appeals is clear. We are duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *Buchanan v. Overley*, 39 Kan. App. 2d 171, 175-76, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008).

The statements in *Sidwell*, *Drach*, and *Singer* indicate our Supreme Court may be susceptible to arguments which would limit the scope and application of the rule against perpetuities to commercial transactions, including the reservation of a royalty interest. However, it is its right and obligation to make such a decision, not our Court of Appeals panel's.

Because *Miller v. Sooy*, *Lathrop v. Eyestone*, and *Cosgrove v. Young* are existing and binding precedents, we are compelled to follow those decisions and hold the reservation to the DeLays in the 1924 deed was of a royalty interest which is in violation of the rule against perpetuities and, therefore, null and void. This requires us to affirm the district court.

We encourage the DeLays to seek review of our decision and our Supreme Court to accept, review, and determine whether the language found in *Sidwell*, *Drach*, and *Singer* indicates a change in the application of the rule against perpetuities to royalty interests. Such a review could also include an examination of the issue of whether production is to continue to be the vesting event if the rule against perpetuities is to continue to be applied to these transactions.

Affirmed.