NOT DESIGNATED FOR PUBLICATION

No. 127,688

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TODD SCHREINER EXCAVATING, INC.,
*Appellant*,

v.

SMITH & LOVELESS, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held May 20, 2025. Opinion filed August 29, 2025. Affirmed.

*Terry A. Iles*, of Law Office of Terry A. Iles, of Topeka, for appellant.

*Dan Crane Sanders*, of Monaco, Sanders, Racine, Powell & Reidy, LLC, of Leawood, for appellee.

Before WARNER, C.J., CLINE and COBLE, JJ.

CLINE, J.: This case arises from a construction dispute between two Kansas contractors over a project in Texas. Smith & Loveless, Inc. (S&L) contracted with Todd Schreiner Excavating, Inc. (Schreiner) to perform work on the project, but a disagreement arose before the work was completed. S&L hired another contractor to finish the job and Schreiner sued for unpaid work on the project. The district court entered judgment for Schreiner for part of the damages sought and denied its claim for attorney fees and prejudgment interest under the Kansas Fairness in Private Construction Contract Act

1

(KFPCCA), K.S.A. 16-1801 et seq., after finding the amounts sought were disputed. Schreiner appeals the district court's decision denying relief under the KFPCCA.

After reviewing the record, we see no error in the district court's ruling. The KFPCCA only provides for interest and attorney fees related to undisputed requests for payment, and Schreiner did not establish the amounts it sought were undisputed or that S&L wrongfully withheld retainage owed to Schreiner. See K.S.A. 16-1803; K.S.A. 16-1804; K.S.A. 16-1806.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, S&L was hired to perform work at a petrochemical facility in Point Comfort, Texas. S&L then subcontracted with Schreiner to perform part of this work. The parties entered "lump sum" contracts for two projects: Project 229 (the three tanker project) and Project 225 (the dirty tanker project). Each contract provided for installment or "progress" payments due after Schreiner's completion of described stages of work. Both contracts allowed S&L the discretion to condition payment to Schreiner on Schreiner signing a partial lien release or final lien release, with forms for each release attached as addendums to the contracts.

Schreiner began work on both projects and received progress payments for each. At first, S&L did not condition payment for work on the three tanker project on Schreiner's execution of a lien release. The parties also agreed to two change orders for additional work on the three tanker project. S&L did not condition payment for the change order work on Schreiner's execution of a lien release. But Schreiner signed partial lien releases before receiving progress payments on the dirty tanker project and the three tanker project.

2

After completing work on the dirty tanker project but before the three tanker project was completed, the parties disagreed over whether Schreiner was owed payment on change orders it submitted on the dirty tanker project. Under the contract, any additional work outside the scope of the contract and the cost for such work required prior written approval by S&L. S&L contended Schreiner did not obtain the required approval for this change order work and its charges for the change order work were excessive. While Schreiner claimed an S&L project manager had approved the change orders, S&L disputed this claim and said the manager had no authority to approve change orders—only the company president did.

The parties met to try to resolve their dispute. At this meeting, S&L agreed to pay part of the change order amount sought by Schreiner ($14,000) along with the final retainage payment of $7,450. Schreiner admitted it agreed to accept the negotiated change order amount as final payment on the dirty tanker project but later claimed the payment was supposed to be made that day.

Around this time, Schreiner submitted an invoice to S&L for a progress payment related to demolition work on the three tanker project in the amount of $62,782.50. But it then submitted a letter to the project owner claiming it was owed $85,000 plus $8,500 for retainage for this work. At this same time, it submitted other letters to the owner claiming it was owed $61,500 plus $6,150 for retainage for interconnecting piping work and $10,463 for an additional 10% retainage owed upon completion of the three tanker project, and $7,450 for the final 10% retainage and $22,097.67 for change order work on the dirty tanker project.

S&L sent Schreiner a partial lien release for execution as a condition for the $62,782.50 payment due on the three tanker project and a final lien release for execution as a condition for sending Schreiner the $21,450 it had agreed to pay to close out the dirty tanker project. At that point, the parties reached an impasse on payments for both

3

projects. Schreiner refused to sign any lien releases before it was paid and demanded payment of the amount in the notices it had sent the owner. S&L explained to Schreiner that the releases would not become effective until payment was made, per the language of the releases, and that the contract required the signed releases be submitted before payment could be processed. S&L also pointed out that the notices Schreiner sent to the owner were incorrect because they included claims for work that was not yet done, retainage that was not yet due, and the amount of the change order claim on the dirty tanker project was more than what the parties had agreed S&L would pay for that work.

A few weeks later, Schreiner's counsel sent a demand letter to S&L seeking payment of the amounts in the notices sent to the owner and claiming Schreiner was filing a lien on the project. Schreiner eventually sued and, in its complaint, alleged two counts of breach of contract as well as claims for promissory estoppel, quantum meruit, negligence, and violation of the KFPCCA. S&L counterclaimed for amounts it claimed it had to pay another contractor to finish the work on the three tanker project. Schreiner ultimately withdrew its promissory estoppel and negligence claims.

After a three-day bench trial, the district court ruled for Schreiner on its breach of contract claims, awarding a total of $29,738.26 for the dirty tanker project and $104,846.25 for the three tanker project. It dismissed Schreiner's quantum meruit claim and ruled in favor of Schreiner on S&L's counterclaim. The court denied Schreiner's claim for prejudgment interest and attorney fees under the KFPCCA because it found the payment amounts were disputed. It also noted the KFPCCA states a contract may require a subcontractor to provide a lien waiver or release as a condition for payment. The only portion of that decision which Schreiner raises on appeal is whether the district court erred in finding its damages were disputed and therefore the KFPCCA did not apply.

Schreiner first argues the district court erred by finding that the damages were disputed, which was the court's basis for concluding Schreiner was not entitled to prejudgment interest and attorney fees under the KFPCCA. While it acknowledges that S&L agreed to pay some of the amounts at issue upon Schreiner's execution of lien releasees, Schreiner claims (1) the lien releases violated K.S.A. 16-1803(b)(2) and are thus void as against public policy, (2) the contracts did not require lien releases as a condition precedent to payment, and (3) S&L was equitably estopped from conditioning payment on the lien releases. It also claims some of its payment requests were undisputed since the district court awarded the same amounts Schreiner sought for these requests as damages: namely, $29,738.26 for the dirty tanker project, and three categories of damages for the three tanker project: $7,100 for change order work, $62,782.50 for demolition work, and $10,463.75 for retainage.

*Standard of Review*

The parties agree our decision involves review of both legal and factual determinations made by the district court. We have unlimited review of legal determinations—such as the court's interpretation of the KFPCCA and the parties' contracts. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022); *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). We review the district court's factual determinations by looking to see whether those determinations are supported by substantial competent evidence, which is evidence that possesses relevance and substance, and is viewed "in the light most favorable to the prevailing party, disregarding conflicting evidence or other inferences that might be drawn." *Roll v. Howard*, 59 Kan. App. 2d 161, 172, 175-76, 480 P.3d 192 (2020). Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). Schreiner

acknowledges that in conducting our review we cannot reweigh the evidence or assess the credibility of witnesses. 305 Kan. at 881.

*Did Schreiner preserve its public policy argument?*

Schreiner contends the lien releases are against public policy because they are not limited to the amount of the payment under K.S.A. 16-1803(b)(2). Yet Schreiner did not make this argument in the pretrial order or at trial. In fact, Schreiner admits the first time it made this argument was in its posttrial briefing. Yet, according to the pretrial order, this briefing was simultaneous and responses were not allowed.

Generally, issues not properly raised before the district court cannot be raised for the first time on appeal. *In re N.E.*, 316 Kan. 391, 407, 519 P.3d 586 (2022). There are exceptions to this general rule. That is, a new legal theory may not be asserted for the first time on appeal, unless: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; or (3) the district court was right for the wrong reason. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

Schreiner has the burden to show a preservation exception applies. See *In re N.E.*, 316 Kan. at 407-08. To successfully prove one of these exceptions applies, it is required to explain why an issue not raised below should be considered for the first time on appeal. Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). The Kansas Supreme Court has cautioned litigants that Rule 6.02(a)(5) is strictly enforced. And by failing to follow Rule 6.02(a)(5), a litigant risks a ruling that the issue was improperly briefed and would be deemed waived or abandoned. *In re N.E.*, 316 Kan. at 408. Finally, an appellate court's decision to review an unpreserved claim under an exception is prudential. This

6

means that even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

Schreiner does not rely on any of the exceptions to the preservation rule to justify our consideration of its argument. Instead, it contends it was not required to raise this issue, calling it "a defense to a defendant's defense," which it claims it was not required to assert in the pretrial order. It claims by raising the issue in its posttrial brief, it properly preserved the issue. We disagree.

Schreiner's claim that the lien releases are legally void is a question of law that should have been articulated in the pretrial order, to give both S&L and the district court notice that it was an issue that needed to be addressed and determined. It likely should have also included as a question of fact in the pretrial order whether the scope of the lien releases extended beyond the payment for which the lien release was requested. At the very least, it should have addressed this issue at trial—yet it made no mention of this argument in its opening statement or closing argument. By waiting until after trial to raise the issue, S&L was unfairly surprised and foreclosed from presenting any testimony, other evidence, or legal argument about the scope of the lien releases and how their language should be construed, the impact of Schreiner's execution of prior lien releases in the same form without objection, and whether the lien releases are totally or partially void or unenforceable under the KFPCCA. And, according to the pretrial order, it was precluded from even responding to the argument because the parties agreed responses to posttrial briefing were not allowed. The district court was also foreclosed from hearing S&L's position on the issue and had no awareness that it needed to determine this issue when considering the evidence at the trial. This is unfair and a misuse of appellate review. As this court recently pointed out:

> "Appellate courts are designed to review decisions made by the trial courts, not to serve
> as forums for introducing new arguments or evidence. This principle ensures that trial

courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party." *State v. Bednarz*, No. 126,821, 2025 WL 2265714, at *3 (Kan. App. 2025) (unpublished opinion).

When Schreiner mentioned this argument at a posttrial hearing, S&L responded that this was a new argument raised in Schreiner's posttrial brief and pointed out that Todd Schreiner testified that he did not sign because he wanted payment first. Schreiner did not dispute these statements or offer any reason why the district court should consider its new argument in its posttrial brief. As S&L points out on appeal, the parties' pretrial order contained standard language noting that it controlled the subsequent course of the case and could not be modified except by consent of the parties and the court's approval or by order of the court to prevent manifest injustice. The record reveals no such agreement or order.

Moreover, the district court never addressed or ruled on this issue, so we have no decision to review on appeal. In its reply brief, Schreiner claims the district court erred by failing to determine the issue. But if Schreiner believes the court erred by omitting a finding of fact or conclusion of law in its decision, it should have filed a motion under Supreme Court Rule 165 (2025 Kan. S. Ct. R. at 228) to seek a ruling from the district court on this issue. See *State v. Espinoza*, 311 Kan. 435, 437-38, 462 P.3d 159 (2020). Schreiner had a duty to object to inadequate findings of fact and conclusions of law in order to give the district court an opportunity to correct them. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 378, 855 P.2d 929 (1993). And "if the findings are objectionable on grounds other than sufficiency of the evidence, an objection at the trial court level is required to preserve the issue for appeal." *In re Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995).

Schreiner failed to explain to the district court why it believed that court could consider its posttrial argument when the argument was not included in the pretrial order

or presented at trial. Likewise, it has failed to persuade us that it properly preserved its challenge to the legality of the lien releases for appellate review. That said, we make no ruling on the merits of Schreiner's argument—we simply find it was not properly preserved for consideration on appeal.

*Did Schreiner preserve its equitable estoppel argument?*

Schreiner argues the doctrine of equitable estoppel should apply because S&L never previously required Schreiner to execute any lien release as a condition precedent to payment for the three tanker project and it only required a partial lien release for two of the three payments on the dirty tanker project. Schreiner therefore contends S&L was estopped from requiring it to sign a lien release to receive payment.

Schreiner also failed to make this argument in the pretrial order nor was it raised in the posttrial hearings. Again, Schreiner addressed equitable estoppel for the first time in its posttrial brief. We find it improperly preserved for the same reasons we find its public policy argument was improperly preserved on appeal. Moreover, even if we considered this argument for the first time on appeal, Schreiner fails to develop it. Schreiner did not explain—either in its posttrial brief or on appeal—how the elements of equitable estoppel are satisfied here.

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct." *Cosgrove v. Young*, 230 Kan. 705, Syl. ¶ 6, 642 P.2d 75 (1982). "The party asserting equitable estoppel must show that (1) another party induced reliance on certain facts, (2) the party asserting estoppel reasonably relied upon those facts, and (3) that party was prejudiced by its reliance." *Becker v. The Bar Plan Mut. Ins. Co.*, 308 Kan. 1307, 1316, 429 P.3d 212 (2018).

9

Schreiner failed to explain how it was induced to believe the lien release provisions would not apply when the contracts allow for S&L to require a lien release as a condition to payment and even includes the forms for such releases. And its argument that S&L only required partial lien releases for the dirty tanker project is specious because the reason S&L required a final lien release for this project—instead of a partial one like it previously requested—was because Schreiner's work on that project was complete.

Schreiner also fails to explain how it would be prejudiced by S&L's enforcement of its right under the contracts. And, again, we have no ruling from the district court on this issue to review nor did Schreiner ask the court to cure this omission. Therefore, like Schreiner's public policy argument, Schreiner failed to show how this argument was presented to the district court and preserved for appeal.

*Did the district court err in finding that the lien releases could be a condition to payment under the contracts?*

Schreiner also claims the district court erred in its reading of the lien release language in the contracts and its application of the KFPCCA provisions to this language. Schreiner points to the portion of the court's ruling where it stated, "K.S.A. 16-1803(b)(2) of the [KFPCCA] states that a contract may require a contractor or subcontractor to provide a waiver or release of such rights as a condition for payment." Schreiner says that since the contracts give S&L the discretion to require a lien release, the district court "erred when it inferred that the contracts required a waiver or lien release as a condition to payment and that the KFPCCA was not applicable."

Both contracts had the following provision: "Purchaser may as a condition precedent to any payment hereunder, require Contractor to submit complete waivers and releases of any and all claims of any person, firm, or corporation." S&L is identified as

10

the purchaser and Schreiner is identified as the contractor in both contracts. Since the contracts give S&L the *discretion to require* a lien release, Schreiner argues this means the contracts themselves did not require a lien release as a condition to payment. According to Schreiner, to qualify as a condition precedent, mandatory language must be used. In other words, Schreiner contends the contracts "do not mandate the execution of a lien release as a condition precedent to payment, when the language does not clearly and expressly condition [S&L's] obligation to pay on Schreiner's performance of providing a waiver or lien release."

Even though the contracts do not "mandate" the execution of a lien release, they gave S&L the power to mandate it. And if S&L chooses to exercise that power—like it did here—then the contracts gave it the power to require execution of a lien release as a condition precedent to payment. Whether the contract made the lien release requirement mandatory or left it to the discretion of S&L is irrelevant to whether the requirement is a condition precedent to payment: If S&L exercises its discretion under the contracts to require a lien release, then the contracts provide S&L may require a lien release as a condition precedent to payment.

We therefore find Schriener's argument that the district court erred in this aspect of its ruling to be unpersuasive.

*Schreiner is not entitled to interest or attorney fees under the KFPCCA because its payment requests were not undisputed.*

The KFPCCA requires a contractor to pay its subcontractors "any amounts due within seven business days of receipt of payment from the owner, including payment of retainage, if retainage is released by the owner, if the subcontractor has provided a timely, properly completed and undisputed request for payment to the contractor." K.S.A. 16-1803(f). And "[i]f the contractor fails to pay a subcontractor within seven business days, the contractor shall pay interest to the subcontractor beginning on the eighth

11

business day after receipt of payment by the contractor, computed at the rate of 18% per annum on the undisputed amount." K.S.A. 16-1803(g). It also mandates an award of costs and reasonable attorney fees to the prevailing party in any action to enforce the requirements of K.S.A. 16-1803. See K.S.A. 16-1806.

At issue in this appeal are Schreiner's request for payment of $29,738.26 for work on the dirty tanker project and three line item amounts it sought for work on the three tanker project: (1) $7,100 for change order work, (2) $62,782.50 for demolition work, and (3) $10,463.75 for retainage.

1. *Dirty Tanker Project*

After it finished work on the dirty tanker project and demobilized, Schreiner submitted seven invoices to S&L between June and November 2019, totaling $29,738.26. Six of these invoices were for change order work (totaling $22,288.26) and one, totaling $7,450, was for retainage. From the beginning, S&L disputed that it owed $22,288.26 for the change order work, claiming the contract required that additional work must be "costed and approved in writing" by S&L and the charges for the work were excessive. Schreiner claims S&L approved the change orders and therefore Schreiner was entitled to payment of the full amount claimed. It relies on an email from S&L's project manager for the projects, David Wooldridge, which stated generally that he "did receive and approve of your several Change Orders for the [dirty tanker project]." Yet S&L claimed at trial that Wooldridge had no authority to approve change orders. Instead, it claimed only its president, Frank Rebori, could approve change orders. Rebori testified Wooldridge knew Rebori was the only one who could approve change orders.

Rebori testified he approved the change orders for work Schreiner performed on another project for S&L and he approved two change orders on the three tanker project, totaling $18,000 each. Wooldridge testified Rebori had to approve the two $18,000

12

change orders because Wooldridge did not have authority to authorize them himself. Yet Wooldridge claimed he had authority to approve the seven individual change orders submitted by Schreiner on the dirty tanker project because they were for smaller amounts that were within his authority and he approved them separately. He also testified he discussed the change orders with Rebori.

Rebori testified when he reviewed the change orders he believed the cost was not warranted for the work involved. But S&L agreed to pay some amounts for the work and so the parties met to discuss the change orders. S&L contends that Todd Schreiner, Schreiner's president, agreed to accept $14,000 for the change order work at this meeting. Therefore, according to S&L, it agreed to pay and Schreiner agreed to accept $21,450 as final payment on the dirty tanker project—which included $14,000 for change order work and $7,450 for the retainage. At trial, Todd Schreiner claimed he only agreed to accept this amount if payment was made that day.

On appeal, S&L points to correspondence between the parties which indicates Schreiner agreed to accept the settled amount. S&L employees, including Wooldridge, sent several emails to Todd Schreiner after the meeting, discussing the "agreed upon" amount of the change orders and "the agreed to $14,000.00 in change orders on the 'dirty tanker.'" The day after the meeting, Wooldridge emailed Todd Schreiner and stated S&L was processing payment for the change orders and it would be the following week before payment would be processed.

The following week, Todd Schreiner emailed an S&L employee, John Colfax, asking if he had "heard anything or had any luck," to which Colfax responded that he was "still trying to get the [$]21K released." A few days later, Colfax emailed Todd Schreiner and offered to electronically transfer $21,450 to Schreiner that same day if Schreiner would sign and return the attached final lien release. The email mentioned this amount included the "agree[d] to amount of $14,000.00 for the change orders you submitted" and

13

the $7,450 in retainage. Colfax separately emailed Todd Schreiner that same day asking for a partial lien release on the three tanker job as a condition for releasing a payment of $62,782.50.

Todd Schreiner did not respond to any of these emails claiming he did not agree to accept $14,000 for the change order work. But he did respond to the email requesting a lien release for the three tanker project, claiming he would not sign any lien releases before he was paid. In this email, Todd Schreiner said he wanted payment in the amount sought in the notices Schreiner sent the project owner. Colfax sent Todd Schreiner an email a few days later in which he claimed to be reiterating his comments in a recent telephone conversation with Schreiner. And Colfax also told Schreiner the lien releases do not become effective until Schreiner is paid, and he noted how the contract requires execution of lien releases before payment is to be processed.

The district court awarded Schreiner the full amount of its payment request— $29,738.26—at trial. But it found Schreiner was not entitled to interest or attorney fees on this claim because the amount sought by Schreiner was disputed. Schreiner claims on appeal that the district court erred because S&L "had no justifiable, good faith reason for withholding payment to Schreiner." While Schreiner repeats its contention before our court as to why S&L was not justified in withholding payment in full—by claiming Wooldridge approved the change orders—Schreiner fails to address the evidence S&L offered to support that it disputed the amount of the change orders. In its reply brief, Schreiner claims "[h]olding payment hostage to force a reduced settlement does not dispute the amount owed," but this is not an accurate characterization of the record or S&L's position.

Although Schreiner claims S&L "had no justifiable, good faith reason for withholding payment to Schreiner," the district court found differently. The court resolved this factual question by weighing the evidence and trial testimony, and we

14

cannot reweigh that evidence on appeal, nor can we resolve evidentiary conflicts. Instead, our job is to determine whether there is substantial competent evidence to support this fact-finding. In making this determination, we "'must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1220, 442 P.3d 1038 (2019). Therefore we cannot consider the evidence Schreiner points to but instead we look at whether there is evidence in the record to support S&L's position that it disputed the amount Schreiner sought to close out the dirty tanker project.

To that end, S&L points to testimony and emails exchanged between the parties supporting its reasons for disputing the claim and Todd Schreiner's admission that he agreed to accept the amount S&L offered during the meeting. Schreiner also admits on appeal that S&L required a final lien waiver for the dirty tanker project, which Schreiner would not agree to provide.

While the district court did not find S&L was excused from paying the full amount of the change orders, it did not find S&L disputed Schreiner's claim in bad faith. Since this finding is supported by substantial competent evidence in the record—evidence we cannot reweigh—we therefore see no error in the district court's decision denying Schreiner interest and attorney fees on the amounts sought for the dirty tanker project.

2. *Three Tanker Project*

In the pretrial order, Schreiner sought damages in the amount of $182,869.27 for the three tanker project, itemized as follows:

"a. Remaining amount due under the contract for labor and materials that have been provided is $85,000.00.

15

"b. Change Order 478 for an additional amount of $7,100.00.

"c. Interconnecting pipe in the amount of $61,500.00.

"d. Retainage in the amount of $10,463.75.

"e. Miscellaneous items in the amount of $18,805.52, which are provided in more detail below:

| | | |
|---|---|---|
| i. | Demobilization | $3,500.00 |
| ii. | Certified Welding | $1,600.00 |
| iii. | Additional Drug Testing | $1,000.00 |
| iv. | Reload and then Unload Pipe | $1,600.00 |
| v. | Hauled Pipe Back | $1,500.00 |
| vi. | Pipe Storage | $8,000.00 |
| v[ii]. | Butterfly Valves | $1,605.52" |

It rescinded its request for the $1,600 charge for certified welding and the $2,750 charge for excavation work at trial, which reduced its damages request on this project to $178,519.27. In its posttrial brief, Schreiner renamed its first category of damages (totaling $85,000) to "Demo and Other Work."

The district court awarded damages in the amount of $104,846.25 for the three tanker project, itemized as follows:

| | |
|---|---|
| "a. Change Order 478 | $7,100.00 |
| "b. Demolition work | $62,782.50 |
| "c. Piping | $21,000.00 |
| "d. Demobilization | $3,500.00 |
| "e. Retainage | $10,463.75" |

The "Demolition work" was the category of damages that Schreiner called "Demo and Other Work" in its posttrial brief.

On appeal, Schreiner claims three categories of damages were undisputed: (1) Change Order 478 for $7,100, (2) Demolition Work for $62,782.50, and (3) Retainage for $10,463.75.

a. *Change Order 478*

To support its argument that this category of damages was undisputed, Schreiner relies on the fact that the district court awarded the same amount as Schreiner sought in its change order invoice. While this is technically true, it is not the whole truth.

S&L disputed Change Order 478 because it believed the extra work was not preapproved as required by the contract and it included work for which Schreiner had already been paid. And, in fact, Todd Schreiner admitted at trial that $2,750 of this change order was duplicative. While he denied at trial that this work was included in the $85,000 category of damages ultimately labeled "Demolition Work," Schreiner's posttrial brief claimed that it was included in this category of damages. Schreiner thus removed this item of damages in its posttrial brief from the amount it sought for Change Order 478. Specifically, Change Order 478 contained three items of expense: (1) $2,750 for excavation, (2) $2,600 for welder education, and (3) $1,750 for pipe fabrication. In Schreiner's posttrial brief, it only sought reimbursement for two of these items: (1) $2,600 for welder education and (2) $1,750 for pipe fabrication, citing Schreiner's admission that the $2,750 charge for excavation was duplicative since it was included in Schreiner's $85,000 category of damages for "Demo and Other Work."

The district court ultimately awarded $62,782.50 instead of $85,000 for the "Demo and Other Work" category of damages, apparently removing the duplicative charge from this category of damages instead of Change Order 478. But the fact remains that S&L's concern that Change Order 478 contained a duplicative charge bore out. And since the record supports the district court's finding that S&L disputed Schreiner's

payment request in Change Order 478—and apparently with good reason—we see no error in the court's denial of fees and interest on this category of damages under the KFPCCA.

### b. *Demolition Work*

Schreiner claims that since the district court awarded it $62,782.50, which was the same amount it sought in its Invoice 473, this means its payment request was undisputed and therefore S&L owes attorney fees and interest on this amount. Never mind that Schreiner sought $85,000 for this damage category at trial or that it failed to satisfy the condition precedent to receiving this payment. Schreiner admits that S&L agreed to pay this invoice only if Schreiner would sign a partial lien release—which Schreiner refused to do. As S&L points out, Schreiner filed a lien notice with the project owner around this time asking for more money—$85,000—than was scheduled under the contract, which was why S&L requested the partial lien release before releasing the payment of $62,782.50. Schreiner cannot claim its payment request was undisputed when it told the owner that it was owed a different amount.

For these reasons, we agree with S&L that the record contains substantial competent evidence to support the district court's finding that there was a genuine dispute over the payment Schreiner was entitled to receive under the contract in connection with Invoice 473. Not only did Schreiner seek a different amount of damages for the work at issue in Invoice 473 but Schreiner failed to satisfy the condition precedent S&L required under the contract to receive payment of this invoice. So we also see no error in the court's denial of fees and interest on this category of damages under the KFPCCA.

### c. *Retainage*

Both contracts contain fairly standard retainage provisions. Retainage in construction projects is the amount of money withheld from payment to a contractor or subcontractor until the project owner accepts the work. It is normally an agreed-upon percentage of the entire contract price. Under the KFPCCA, retainage cannot exceed 10% of the value of the contract. K.S.A. 16-1804. Here the parties agreed S&L would pay Schreiner its 10% retainage payment "Upon Owner Acceptance of The Project Work."

Schreiner claims it was owed $10,463.75 for retainage, which represented 10% of the amount it had been paid on the contract at the time Schreiner contended the contract was terminated. It claims on appeal that it invoiced S&L for this amount but the record citations it provided were letters it purportedly sent to the project owner and others—but not S&L—claiming it was owed this retainage "upon completion of the project." These letters contain no attachments nor do they state that S&L was copied on them. And while we need not do so, our independent review of the record reveals no invoice to S&L for this retainage. We add that in Schreiner's presuit demand, it stated the amount of the retainage owed on the three tanker project was more than twice this amount.

While Schreiner is correct that K.S.A. 16-1804(j) provides for interest on wrongfully withheld retainage, that interest is calculated from when "the payment was due." K.S.A. 16-1804(j). Yet it cites no support for its argument that the retainage payment was due here on the date of its letter to a third party—especially when it made no request to S&L to make this payment and, in fact, when, again, it contended differing amounts were due.

Schreiner claims S&L "had no justifiable, good faith reason for withholding payment to Schreiner," yet it fails to acknowledge the evidence in the record which supports the district court's finding of a legitimate dispute. To begin, S&L disputed that

19

the contract was terminated, which was the triggering event upon which Schreiner based its claim for retainage. And S&L contended it did not owe retainage because the project was not completed. Schreiner fails to address either of these reasons for disputing payment on appeal. Last, as previously noted, the amount of retainage owed cannot be called undisputed when Schreiner sought a different amount at trial than it claimed it was owed before trial.

For these reasons, we see no error in the district court's denial of fees and interest on Schreiner's request for retainage under the KFPCCA.

Affirmed.